# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-4247

RUSSELL MARTIN,

*Petitioner-Appellant,*

*v.*

WILLIAM GROSSHANS, Administrator,
Division of Probation and Parole,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 00 C 1062—**Charles N. Clevert, Jr.**, *Judge.*

ARGUED JUNE 9, 2005—DECIDED SEPTEMBER 15, 2005

Before BAUER, RIPPLE, and MANION, *Circuit Judges.*

BAUER, *Circuit Judge.* Russell Martin appeals the district court's denial of his petition for a writ of habeas corpus. Martin was convicted of three counts of second-degree sexual assault in 1995. Though he has completed his prison and parole term, he is still serving a term of probation. Martin's habeas petition is based on his claim that his trial counsel was ineffective; we agree and therefore reverse and remand with instructions to grant the writ of habeas corpus.

## I.  Background

Martin entered the Nashotah House Seminary in Wisconsin in 1985. He completed the three-year program and became an ordained Episcopal priest in 1988. In 1994, while working at a parish in Jacksonville, Florida, Martin was informed that he had been accused of sexually molesting a boy while he was at Nashotah House. The boy, Carl S., claimed that Martin had molested him three separate times in the course of one evening in either the fall of 1987 or the spring of 1988. Carl S. was thirteen years old at the time of the assaults. He first raised this accusation to his therapist in 1993; the state of Wisconsin filed a criminal complaint charging Martin with three counts of second-degree sexual assault on June 14, 1994.

Martin's case went to trial in 1995. At trial, Carl S. testified about the assaults and his mother testified that he began to have behavioral problems at about the same time period. Denise Watson Gilbreath, a Florida attorney, and Officer Charles Morancheck also testified for the prosecution. Martin's claim stems, in part, from the testimony of these two individuals.

Gilbreath is a former prosecutor with experience in sexual abuse cases involving children. She was a member of the Jacksonville parish where Martin worked and was approached by him in 1993 to help develop a policy for dealing with allegations of sexual misconduct in the parish. Gilbreath testified that Martin strongly disagreed with the policy recommendation she eventually helped develop. Specifically, she stated that Martin became very agitated and felt that the policy needed to ensure that people accusing ministers of sexual abuse were telling the truth before the parish involved the police. Gilbreath testified that she felt that this was an inappropriate reaction that focused too greatly on protecting the accused clergymen, not the accusers.

Officer Morancheck testified regarding his meeting with Martin and his attorney in March 1994. He had previously called Martin and confirmed that he had been informed of the allegations against him. Morancheck stated that at the meeting Martin, on the advice of counsel, provided only biographical information and did not answer questions about Carl S.'s allegations. Morancheck testified that after describing the accusations to him, Martin did not make any verbal responses, but raised an eyebrow and pursed his lips.

Martin testified in his own defense, as did his wife and eight character witnesses. At closing argument, the prosecutor argued that the jury should not be swayed by the testimony of Martin's character witnesses, because even men like Jeffrey Dahmer and Theodore Oswald had character witnesses. Martin was convicted on all three counts.

## II. Discussion

Since Martin filed his habeas petition after April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, governs our review. We may not issue a writ of habeas corpus unless the state court proceedings either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). Martin contends that the state court's ruling that he was not denied the effective assistance of counsel is contrary to clearly established federal law as articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).

Under *Strickland*, Martin must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. at 687. To be

deficient, counsel's representation must fall below an objective standard of reasonableness. *Id*. at 688. Deficient performance prejudices the defense when the errors were serious enough to deprive the defendant of a fair trial. *Id*. at 687. Martin claims that his trial counsel was ineffective for failing to: (1) object on proper grounds to Gilbreath's testimony regarding Martin's behavior and emphasis on the protection of clergy members from false accusations of sexual abuse; (2) object on proper grounds to Officer Morancheck's testimony regarding Martin's exercise of his rights to counsel and silence; and (3) move for a mistrial following the prosecution's closing argument, which compared Martin to Jeffrey Dahmer among others.

## A. Deficient Performance

The Wisconsin Court of Appeals ruled that Martin's attorney was not deficient for failing to object to Gilbreath's testimony on grounds of relevancy and unfair prejudice because her testimony was admissible to show Martin's consciousness of guilt. We find that Gilbreath's testimony was irrelevant and prejudicial, and that Martin's defense counsel performed deficiently for failing to make the proper objections. By the state court's logic, Martin's reaction to Gilbreath's proposal and his emphasis on protecting clergy from false accusations shows that he was conscious of his own guilt and seeking to protect himself. This argument doesn't wash. First, Martin was not even aware of the accusations against him at the time of his interactions with Gilbreath. Moreover, his contact with Gilbreath was in a completely different jurisdiction and several years after the time of the alleged assaults. Second, and most important, a belief that clergy should be protected from false allegations of sexual misconduct and afforded due process does not imply a guilty conscience. Martin's actions in Florida had no bearing on his arrest or prosecution in Wisconsin; nothing

that Gilbreath testified to could possibly have interfered with the investigation of the Wisconsin authorities. Martin's conduct at the meeting with Gilbreath and her testimony about it does not make his guilt any more or less probable. To hold that his behavior somehow revealed a guilty conscience requires an illogical and speculative step—a step which we are unwilling to take. The Wisconsin court's conclusion that Martin's attorney was not deficient for failing to properly object to Gilbreath's testimony is unreasonable; it is not "one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997).

Martin next argues that Morancheck's testimony was irrelevant and an impermissible comment on the exercise of his constitutional rights. There seems to be little or no reason why Morancheck was called to testify. His testimony adds an imponderable to an already imponderable prosecution decision and does not make Martin's guilt any more or less probable. The testimony should have been excluded and Martin's counsel performed deficiently for failing to properly object to it.

Finally, Martin's counsel was also deficient for failing to move for a mistrial after the prosecution's closing argument. The prosecutor's attempt to neutralize Martin's character witnesses by referring to Jeffrey Dahmer and Theodore Oswald was inflammatory and improper. The reference to Dahmer was particularly troubling, considering the trial took place in Wisconsin in 1995, when the memory of Dahmer's sexual exploitation and gruesome murders of young men was still fresh in the minds of area residents. Martin's counsel did not object before the jury because he did not want to emphasize and call attention to the improper argument. Even if this was a reasonable decision—and we doubt it—it does not change the fact that counsel did not later move for a mistrial outside the presence of the jury. This failure could not be part of any

legitimate trial strategy and falls below objective professional norms. We note that the prosecutor's improper argument was serious in nature, uninvited by the defense, and not rebutted by the defense, apparently because of its concern with not enhancing the damage already done. *See United States v. Durham*, 211 F.3d 437, 442 (7th Cir. 2000). Considering the incendiary nature of the prosecutor's closing, failure to move for a mistrial was deficient.

## B. Prejudice

The Wisconsin Court of Appeals, without squarely addressing deficiency, ruled that Martin was not prejudiced by Morancheck's testimony and the prosecutor's closing argument.[1] However, the court misstated the burden of proof in establishing prejudice. To demonstrate prejudice, Martin must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Supreme Court specifically explained that a defendant "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." 466 U.S. at 693. In its opinion, the Wisconsin Court of Appeals incorrectly placed the burden on Martin to "show that, but for defense counsel's unprofessional errors, the result of the proceeding would have been different." Appellee argues that this mistake was most likely a mere typographical error, and that any confusion on the part of the Wisconsin court regarding the prejudice analysis would have been cleared up by this court's opinion in *Washington v. Smith*, 219 F.3d 620 (7th Cir. 2000). The problem with this explanation is that *Smith* was decided several months after the decision

---

[1] The Wisconsin Court of Appeals did not reach the issue of prejudice regarding Gilbreath's testimony, having found that counsel was not deficient in failing to properly object to it.

by the Wisconsin Court of Appeals. We are not convinced that the misstatement of law was a mere typo. The Wisconsin court's prejudice analysis was contrary to *Strickland* and is not entitled to deference; we therefore review the issue of prejudice *de novo*, applying the correct standard. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

To return to the various errors being reviewed, we find that even if these errors, in isolation, were not sufficiently prejudicial, their cumulative effect prejudiced Martin's defense. *See Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000); *Smith*, 219 F.3d at 634-35.

Because Gilbreath is a former prosecutor, her statements that Martin acted inappropriately would be more persuasive to a jury. This was a close case that turned almost exclusively on whether the jury believed Martin or Carl S. The credibility of each of the two would have been of utmost importance to the jury, and Gilbreath's irrelevant and prejudicial testimony undercut Martin's credibility. Calling Morancheck to testify that Martin acted on the advice of counsel and did not verbally respond to the accusations against him served no legitimate purpose and led the jury to the impermissible inference that Martin must be guilty since he retained a lawyer and did not defend himself at the interview. In addition, as discussed above, the prosecutor's improper and inflammatory references to Jeffrey Dahmer and Theodore Oswald had to have been extremely harmful to Martin. The prosecution's evidence was not overwhelming; the errors made by Martin's counsel likely had a greater impact on the jury than they would have in a stronger prosecution case. Taking into account the totality of the evidence, we believe that there is a reasonable probability that the jury would have found differently absent the errors of the prosecution and Martin's trial counsel.

### III.  Conclusion

We REVERSE the decision of the district court and REMAND with instructions to grant the writ of habeas corpus.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—9-15-05