NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 14, 2015[*]
Decided April 15, 2015

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 14-3077

| | |
|---|---|
| JON F. RAETHER, | Appeal from the United States District |
| *Petitioner-Appellee,* | Court for the Eastern District of Wisconsin. |
| *v.* | No. 13-CV-46 |
| MICHAEL MEISNER, | Nancy Joseph, |
| *Respondent-Appellant.* | *Magistrate Judge.* |

**O R D E R**

Following his conviction in Wisconsin state court for second-degree sexual assault of a child, Jon Raether sought a new trial on the ground that his counsel was constitutionally ineffective. The state courts awarded him no relief, but in federal court Raether's arguments carried the day. A magistrate judge, presiding by consent, granted his petition for a writ of habeas corpus, *see* 28 U.S.C. § 2254, and the State of Wisconsin appeals. We affirm the decision in favor of Raether.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

Raether was charged after "Danielle N.," then 14 years old, told a guidance counselor that she had been raped several days earlier at a party. The counselor contacted the police, and an officer interviewed Danielle as well as Emily Bragg, the party's 16-year-old host, and a 15-year-old guest, Emily Brown. Defense counsel's examination of these trial witnesses is the crux of Raether's § 2254 petition.

The police officer's report of his interview with Danielle documents her admission that she remembered only "bits and pieces" of the alleged assault because she had consumed several beers and a fair amount of hard alcohol. What Danielle remembered, she said, was retreating with Raether (who was 18 years old at the time) to the bedroom of Bragg's absent mother. She had told Raether, she continued, that she did not want to have sex because neither of them had protection, but he ignored her protests and forced intercourse on her. According to the police officer, though, Danielle could not provide any more detail about the incident. She had passed out afterward, she said, later coming to first in Bragg's garage, and then the next morning in a bathroom, covered in vomit.

During Bragg's interview, the police officer reported, she said that Danielle was drunk, and so the others suggested that she lie down in the bedroom. Raether then went "back into the bedroom area," Bragg continued, and a short time later Brown yelled that Danielle was on the bed naked from the waist down. The group went to investigate, and they saw Danielle on the bed, wearing only her shirt, vomiting. Raether was in the room already when Bragg entered.

Brown told the officer that she had arrived at Bragg's house early and later went to get beer with a group that included Raether and Danielle. About two hours after returning to Bragg's house, around 1:00 a.m., she found Danielle in the bedroom wearing only a shirt and an unhooked bra, with Raether standing next to the bed. During the interview, the officer reported, Brown recalled that Raether immediately denied having anything to do with Danielle's state. He quickly left the room, Brown had said, after which she and Bragg helped Danielle get dressed.

Raether also agreed to talk to the police officer, and told him that he spent most of the evening on the computer. Danielle, he said, was drunk and had made some advances toward him, all of which he resisted.

Raether was charged with violating WIS. STAT. § 948.02(2), which proscribes sexual contact with a person under 16, regardless of consent. *See State v. Jadowski*, 680

N.W.2d 810, 814–15 (Wis. 2004). The key issue at trial, therefore, was whether sex had occurred, not whether Danielle had consented. At the time of the alleged assault, Raether already was on bond for a charge of operating a vehicle without the owner's consent, so the state also charged him with "bail jumping" in violation of WIS. STAT. § 946.49. That statute defines "bail jumping" to include committing a crime while on bond, so a conviction on the charge of sexual assault also would assure his conviction for this offense.

The police obtained no physical evidence to corroborate Danielle's accusation, and the prosecutor candidly told the jury during his opening statement that he would seek to satisfy the state's burden of proof through the testimony of Danielle and Bragg. Defense counsel retorted that the prosecution would fail to meet its burden of proof because its witnesses were not believable.

Danielle testified first and gave a detailed account of the party and assault. She had led Raether to the bedroom to make another boy jealous, she explained, and once there he locked the door and started making advances. He would not let her leave, Danielle said, not even to use the bathroom, so she urinated on the floor. She told the jury that Raether then pushed her down on the bed and raped her. Later, Danielle continued, after she and Raether had left the bedroom, he and his friends locked her in the garage. She quickly backpedaled, though, and conceded that she did not remember being in the garage and was relying on what her friends said the next morning. In fact, she admitted, she had passed out in the mother's bedroom and woke the next morning in Bragg's sister's bedroom. Danielle conceded that she told no one at the party about the alleged assault, revealing it to a different friend later the next day.

Defense counsel did not confront Danielle about the details included in her trial testimony but omitted from the police officer's report, such as Raether locking the bedroom door. Neither did counsel question Danielle about inconsistencies in the details she did provide, for instance whether she woke up in a bathroom or a bedroom. Counsel did not even pursue Danielle's admission on direct examination that she had feigned personal knowledge of being in the garage, nor did the lawyer challenge Danielle's assertion during cross-examination that her memory of the event had remained constant over time. Counsel simply asked Danielle to repeat her story in an ultimately futile attempt to poke holes in it.

Bragg, the host, testified that she had discovered the door to her mother's bedroom locked. She picked the lock, she told the jury, and Raether exited, fully

clothed. Danielle was on the bed wearing only a bra. Bragg helped her get dressed and walk to the bathroom, where she vomited. After that, according to Bragg, Danielle had slept in her sister's bedroom, and a short time later Bragg watched as some of the guests drew on Danielle's body with a marker. The next morning, Bragg said, Danielle told her about the rape.

Defense counsel did not confront Bragg with conflicts between her trial testimony and the police officer's report, in particular her new revelations that she, not Brown, was the first to arrive at her mother's bedroom, and that the door was locked. Nor did counsel probe Bragg's assertion that Danielle had told her about the rape the next morning, which contradicted Danielle's testimony. Likewise, counsel passed up the chance to question Bragg about the disconnect between her testimony that she and others had rescued Danielle and allowed others to draw with markers on Danielle. Counsel, though, did elicit some additional details about the evening: Bragg had ordered everyone out of the house around 12:30 in order to clean up after Danielle, who had vomited "all over everything" and urinated on the floor of her mother's bedroom.

Brown was called as a defense witness. Working from notes provided by his investigator, counsel walked her through the party at Bragg's house. She had arrived early, she said, and then gone with Bragg and Danielle to a McDonald's where they met up with Raether. He accompanied them to Bragg's house, she testified, and once there concerned himself with the music being played in the background, brushing off advances from Danielle. No one had gotten sick or gone into any bedroom, Brown averred, and the three girls were awake together at around 3:00 a.m. that morning.

The prosecutor immediately impeached Brown with her prior statement to the police. Brown conceded that the police report accurately portrays what she had told the officer. At first she explained that her testimony on direct examination must have concerned a different party, but then, after a reminder that she was under oath, Brown admitted lying to protect Raether. She told the prosecutor that, in fact, she had seen Danielle on a bed wearing no pants. After leaving the courtroom, Brown was arrested for perjuring herself.

Raether testified that he had gone looking for a friend, Cesar, about an hour into the party, and instead found Danielle urinating on the floor of the mother's bedroom. He immediately called for "Emily," and Brown came first, followed quickly by the rest of the group. Bragg and Brown then tried unsuccessfully, he said, to get Danielle to lie

down. Later he and Bragg again helped Danielle back to the mother's bedroom to lie down. He did not see Danielle again until Bragg found her covered in vomit much later.

Defense counsel argued, with minimal elaboration, to the jury in closing that the "scripted" stories of the prosecution's witnesses did not add up, but the jury nevertheless found Raether guilty of both the sexual assault and bail jumping, and the trial judge sentenced him to a total of 10 years in prison, followed by 8 years' extended supervision. After changing lawyers Raether moved for a new trial, claiming that he was prejudiced by his trial counsel's deficient cross-examination of Danielle and Bragg, the lawyer's decision to call Brown as a defense witness, and his choice of defense theory—that Raether had insufficient time to commit the assault. At an evidentiary hearing on Raether's motion, trial counsel admitted receiving and reading the police officer's reports before trial. But when asked about his cross-examination of Danielle and Bragg, counsel could not say why he had not explored the discrepancies between what they had told the police and the jury. All he said is that his strategy, consistent with his chosen theory, was to minimize the number of times these witnesses mentioned Raether and Danielle together in the bedroom. And when asked about his direct examination of Brown, trial counsel acknowledged that he based his questions on his investigator's report, not the police report, even though he knew that the two accounts differed. Counsel also acknowledged letting his investigator prepare Brown to testify, even though he was uncertain if the investigator knew about Brown's statement to the police. "I can't say if there's a strategic reason," counsel conceded, "for, um, making the choices I made."

The trial court refused to grant a new trial, and the state appellate court, the last state court to address Raether's claim of ineffective assistance, upheld that ruling. The appellate court agreed with Raether that his lawyer's handling of the three witnesses was deficient, but, the court concluded, not prejudicial. The state's evidence placed Raether "in the bedroom with a nearly naked" Danielle, the court reasoned, and Raether's own checkered past (he had 13 prior convictions, mostly for joyriding or property crimes) had undermined his credibility. Thus, the court concluded, it could not say that "but for counsel's unprofessional errors the result of the proceeding would have been different."

In his § 2254 petition Raether argued that the state appellate court had unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984). That benchmark decision for claims of ineffectiveness provides that the Sixth Amendment's guarantee of the assistance of counsel is violated if an attorney's actions are objectively unreasonable

and prejudice the defendant. *Id.* at 687–88, 693. The magistrate judge agreed with Raether that the state court's application of *Strickland* is unreasonable and independently determined that Raether's counsel was ineffective.

On appeal the state fails to engage the particular facts of this case, instead proceeding as if stating the standard of review is enough to defeat the claim. The state reminds us of the deferential review ordinarily mandated by the Antiterrorism and Effective Death Penalty Act, and the exceedingly high burden faced by petitioners who complain about the quality of their representation at trial. With these points no one can quibble, but they are no substitute for a defense of the state court's reasoning in this case, which we conclude is indefensible.

Although the magistrate judge concluded that the state appellate court had unreasonably applied *Strickland*, a more immediate problem is that the state court's analysis is *contrary* to *Strickland*. A state court's decision is "contrary to . . . clearly established federal law" if it does not apply the proper legal rule to a petitioner's claim. *See Warren v. Baenen*, 712 F.3d 1090, 1096 (7th Cir. 2013); *Mosley v. Atchison*, 689 F.3d 838, 850 (7th Cir. 2012). That is what happened here. Although the court identified *Strickland* as the controlling legal authority, it did not apply *Strickland*'s framework. Rather, in assessing whether Raether was prejudiced by counsel's errors, the court required a showing of but-for causation. That is not the standard. Instead a petitioner must demonstrate a "reasonability probability"—defined as one "sufficient to undermine confidence in the outcome"—that counsel's errors materially affected the outcome of the proceeding. *Strickland*, 466 U.S. at 694.

It is true that in *Sussman v. Jenkins*, 636 F.3d 329, 359–60 (7th Cir. 2011), we concluded that the omission of *Strickland*'s "reasonable probability" language did not result in a state-court decision that was contrary to *Strickland*. But we reached the opposite conclusion about nearly identical missteps in *Mosley*, 689 F.3d at 850–51, and *Martin v. Grosshans*, 424 F.3d 588, 592 (7th Cir. 2005). This case is more like *Mosley*. There we noted that the state's case "was far from unassailable," and the state court's opinion did not assure us that, despite the use of "shorthand," the court truly applied the correct standard. *Mosley*, 689 F.3d at 850. Here the prosecutor was candid about the assailability of his case, and, as we will explain, the state appellate court's analysis reflects the application of a more onerous standard than that called for by *Strickland*. Moreover, unlike *Sussman*, the state court never correctly articulated *Strickland*'s prejudice standard, or cited to a decision of the state courts that does. *Cf. Sussman*, 636 F.3d at 360. So, as in *Mosley*, the state court's decision is contrary to *Strickland*, meaning that we

must independently determine whether Raether's counsel was constitutionally ineffective. *See Mosley*, 689 F.3d at 853.

Viewed as a whole, *see Raygoza v. Hulick*, 474 F.3d 958, 963 (7th Cir. 2007), we think counsel's performance fell well short of the mark. We can see no reasonable justification for failing to make use of the crucial witnesses' prior inconsistent statements. *See Dixon v. Snyder*, 266 F.3d 693, 703 (7th Cir. 2002); *Driscoll v. Delo*, 71 F.3d 701, 710 (8th Cir. 1995). Counsel's explanation that he sought to minimize the amount of testimony placing Raether in the bedroom is nonsensical. Raether's own testimony placed him in the bedroom, so counsel's choice to abandon certain lines of questioning in pursuit of this goal was pointless, particularly when those lines of questioning would have impeached otherwise damning testimony. *See Rivas v. Fischer*, 780 F.3d 529, 549–50 (2d Cir. 2015); *Davis v. Lambert*, 388 F.3d 1052, 1063–64 (7th Cir. 2004).

The state appellate court concluded on the basis of counsel's testimony that his choice was "strategic," and so accorded that choice substantial deference. This reasoning is flawed, since it could not have been permissible strategy to cross-examine Danielle and Bragg in a manner that, as the court conceded, was deficient. What's more, labeling a choice "strategic" does not *ipso facto* shield it from collateral attack. Instead, under *Strickland* the question is the extent to which a strategic choice is supported by counsel's preparation. *See Campbell v. Reardon*, 780 F.3d 752, 763–64 (7th Cir. 2015). Here counsel's preparation rendered this "strategic" choice patently unreasonable, and the case law does not mandate deference to unreasonable defense tactics. *See Richards v. Quarterman*, 566 F.3d 553, 564, 567 (5th Cir. 2009); *United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 249 (7th Cir. 2003).

The state court examined the prejudice flowing from each alleged error individually, but the correct question is whether Raether was prejudiced by counsel's errors in the aggregate. *See Toliver v. McCaughtry*, 539 F.3d 766, 778 (7th Cir. 2008); *Martin*, 424 F.3d at 592. We conclude that he was: In this battle of credibility, counsel's failure to make use of the witness's prior statements doomed Raether's prospects from the beginning. Had counsel cross-examined the witnesses adequately, he could have cast significant doubt on Danielle's and Bragg's testimony, which was ripe for impeaching. His failure to do so is all the more striking because counsel told the jury he would undermine the witnesses' credibility "but never followed through on this suggestion." *Wiggins v. Smith*, 539 U.S. 510, 536 (2003); *see Hampton*, 347 F.3d at 257. And counsel compounded his error during his closing argument. *See Hall v. Washington*, 106 F.3d 742, 750 (7th Cir. 1997). Having failed to place into evidence the various

inconsistencies between the witnesses' testimony and prior statements, counsel neglected to make use of the inconsistencies that did appear in the record. Instead, he characterized the testimony of Danielle and Bragg as "scripted," a description that served to highlight the ways in which their testimonies aligned. And counsel must have known better than to call a witness who was about to perjure herself. As the district court recognized, all counsel needed to do was undermine the credibility of the state's two witnesses. No other evidence existed on which to convict Raether. "Counsel's failure to use available tools to undermine this credibility resulted in prejudice." *Williams v. Washington*, 59 F.3d 673, 684 (7th Cir. 1995). Because of counsel's substandard performance, Raether's trial did not reliably test whether he did as he was accused.

The grant of habeas corpus relief is AFFIRMED. The stay issued by the magistrate judge on December 23, 2014, is DISSOLVED. The State of Wisconsin shall have 120 days in which to release or retry Raether.