# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2255

TORRAY STITTS,

*Petitioner-Appellant*,

*v.*

BILL WILSON, Superintendent,
Indiana State Prison,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:10-cv-00765—**Larry J. McKinney**, *Judge*.

ARGUED FEBRUARY 14, 2013—DECIDED APRIL 15, 2013

Before KANNE and WILLIAMS, *Circuit Judges*, and
ZAGEL, *District Judge.*[*]

WILLIAMS, *Circuit Judge*. Petitioner Torray Stitts, who
was convicted of murder in Indiana state court and

[*] The Honorable James B. Zagel, District Judge for the United
States District Court for the Northern District of Illinois, sitting
by designation.

sentenced to sixty years' imprisonment, appeals from the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Stitts asserts that his trial counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), because before deciding not to present an alibi defense, he only interviewed one alibi witness, Stitts's father, while unreasonably failing to investigate whether there might be any more. Without explicitly determining whether trial counsel in fact limited his alibi investigation to a single interview, the state court found that such a limited investigation would be sufficient under *Strickland*. We agree with Stitts that this was an unreasonable application of *Strickland*. Given that Stitts's alibi was that he was at a nightclub, where there could be any number of potential alibi witnesses, the failure to explore that possibility is unreasonable. We also find that the state court unreasonably applied *Strickland* when it found no prejudice, because the prosecution's case rested entirely on the shaky testimony of two witnesses which could have been neutralized by alibi witness testimony.

As the State suggests, however, that does not resolve the critical factual question concerning the actual extent of trial counsel's alibi investigation. We have no state court finding to which we may defer, and the record is otherwise ambiguous. So we must remand to the district court to resolve it. If the district court finds that trial counsel performed no further investigation (and there was no other fact that would reasonably justify that conduct), then the district court should grant Stitts's habeas petition. If the district court finds that

trial counsel did more, then it must determine *de novo* whether that investigation was reasonable under *Strickland*. So we reverse and remand.

## I. BACKGROUND

Kevin Hartson was shot and killed on the night of January 22, 2002, in Kokomo, Indiana, and Petitioner Torray Stitts was charged with his murder. The State's case was based entirely on the testimony of two witnesses, Edward Lawton and Ray Charles.[1] According to Lawton, Stitts and his brother asked Lawton and Hartson to pick them up that night and take them to a house to pick up some drugs and/or commit a robbery. On the way, Charles called Hartson on his cell phone. While Hartson was on the phone, Stitts told Hartson to pull over, and then said, "you all motherf—ers gonna break in my s—t?" and shot Hartson four or five times in the head, killing him. The car crashed, Lawton fled the scene, and he dumped his blood-soaked clothes into a dumpster. Charles testified that he was on the phone with Hartson that night and heard Stitts's voice

---

[1] The State contends that its case rested on other evidence too, including the fact that a torn record log found in the victim's car was the other half of a record log found in a notebook recovered from a black coat in the room where Stitts resided. But the State does not explain the significance of this record log, and this evidence notably was not even mentioned in its closing argument. We believe that the weight that such evidence adds to the prosecution's case is negligible.

in the background. He then heard one shot (and no more), after which Hartson said "hold on a minute," and then Charles kept saying "hello" but received no response.

The reliability of these witnesses' testimony was attacked at trial. When the police first asked Lawton about what happened, he said he had nothing to do with the shooting and said he did not know who did it, repeating this story multiple times before finally stating that Stitts was the shooter and that he saw Stitts do it. Lawton also had a significant criminal background and admitted a general willingness to lie to the police, and the State acknowledged at closing that Lawton was a "liar" and a "criminal." As for Charles, he told the police that he called Hartson repeatedly after he heard the shot and got no answer, but that appeared to contradict phone records which did not show that these calls were made. Charles also said that he received a reduced charge from the prosecutor in exchange for his testimony.

Stitts was convicted of murder and sentenced to sixty years' imprisonment, and his direct appeal failed. He then filed a petition for post-conviction relief in state court, claiming that his trial counsel was unconstitutionally ineffective for failing to adequately investigate Stitts's alibi defense for potential presentment at trial. According to Stitts, at the time of the shooting, he was at the American Legion Post, whose venue served as a sort of nightclub that night. At the state post-conviction hearing, Stitts's father testified that Stitts was at the Post along with Stitts's brother, that trial counsel did

not interview Stitts's father until the day before trial, and that he was not called to testify. He also admitted to having a criminal record. Stitts then proffered the testimony of Timothy Harris, a deejay at the Post that night who also supported Stitts's alibi but was not interviewed or contacted by trial counsel. Trial counsel did not testify at the state post-conviction hearing, but his affidavit was submitted as evidence. It stated, "I recall considering, but ultimately choosing not to pursue, an affirmative defense on behalf of the defendant. Defendant had suggested an alibi defense, but I do not recall there being any quality witnesses to testify on his behalf as to a believable alibi." The affidavit did not specifically mention the extent of his alibi investigation, nor did it mention Stitts's father. It added that he strategically decided to attack the State's case on insufficiency of the evidence instead of presenting a weak alibi.

The state trial court denied the petition. In the findings of fact section of its written ruling, the court stated:

> [Trial counsel] considered, but affirmatively chose not to pursue an alibi defense. The only witness available to buttress such a defense was the defendant's father, Walter Stitts, who would not have been a credible witness, and the presentation of Walter Stitts as a defense witness would have diminished the chance of [trial counsel] being able to credibly challenge the sufficiency of the evidence supporting the state's case. While a second potential alibi witness, Timothy D. Harris,

came forward, voluntarily, shortly before the hearing on the Petition for Post Conviction Relief, he was unknown and undiscoverable at the time of trial. [Trial counsel's] decision not to pursue an alibi defense was a sound strategic decision.

On appeal, the Indiana Court of Appeals affirmed. The court repeated the language from trial counsel's affidavit, and then found that trial counsel's interview of Stitts's father was sufficient under *Strickland*:

In the instant matter, we see no evidence that trial counsel's investigation fell below objective standards of reasonableness. Stitts has failed to show that trial counsel did not investigate his claimed alibi defense. The record establishes that trial counsel spoke with Stitts's father after learning that he may have been able to provide Stitts with an alibi but ultimately determined that he was not a credible witness. Moreover, Timothy Harris, who Stitts also claims could have provided him with an alibi defense, did not come forward to provide any information about Stitts's whereabouts on the night of the shooting until two or three weeks prior to the post-conviction hearing. Nothing in the record indicates that trial counsel knew or even could have discovered that Harris could have provided Stitts with an alibi defense prior to trial. Trial counsel was not ineffective in this regard.

In addition, the state appellate court found lack of prejudice, explaining:

> Moreover, Stitts has failed to demonstrate that he was prejudiced by trial counsel's decision not to present an alibi defense. The State presented eyewitness testimony establishing that Stitts was the shooter. In light of this testimony, we are unable to say that there is a reasonable probability undermining Stitts's conviction that the outcome of his trial would have been different had trial counsel presented an alibi defense.

After the Indiana Supreme Court declined to review and denied transfer, Stitts filed the instant federal habeas petition pursuant to 28 U.S.C. § 2254, which was denied by the district court. Stitts appealed, and we granted a certificate of appealability on the issue of whether trial counsel was ineffective for failing to investigate and present an alibi defense.

## II. ANALYSIS

A district court's judgment regarding habeas relief is reviewed *de novo*. *Woolley v. Rednour*, 702 F.3d 411, 420 (7th Cir. 2012). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may grant habeas relief only if a state-court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in the light

of the evidence presented in the state court proceeding."
28 U.S.C. § 2254(d). "For purposes of reasonableness
review, 'a state prisoner must show that the state
court's ruling on the claim being presented in federal
court was so lacking in justification that there was an
error well understood and comprehended in existing
law beyond any possibility for fairminded disagree-
ment.'" *Mosley v. Atchison*, 689 F.3d 838, 844 (7th Cir.
2012) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786-
87 (2011)).

To establish a claim of ineffective assistance of counsel,
a petitioner must show that counsel was deficient in
his performance and that the deficiency prejudiced his
defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
First, the petitioner must demonstrate that his counsel's
performance fell below an objective standard of reason-
ableness. *See id.* at 688. Second, he must demonstrate
that he was prejudiced by the deficient performance. *Id.*
at 694. "When a state collateral review system issues
multiple decisions, we typically consider the last rea-
soned opinion on the claim . . . [u]nless [that] state-court
opinion adopts or incorporates the reasoning of a
prior opinion . . . ." *Woolley*, 702 F.3d at 422 (quotation
marks and citations omitted).

As a preliminary matter, we clarify that the principal
*Strickland* issue on appeal is not whether trial counsel's
decision not to raise an alibi defense at trial—in isolation
from the rest of trial counsel's conduct—was reason-
able. The state court decision as well as the State's brief
repeatedly emphasizes that an attorney's decision not

to raise an alibi defense is generally considered a strategic decision entitled to substantial deference, a fundamental proposition we do not dispute. *See Mosley*, 689 F.3d at 848 ("To avoid the inevitable temptation to evaluate a lawyer's performance through the distorting lens of hindsight, *Strickland* establishes a deferential presumption that strategic judgments made by defense counsel are reasonable."). However, the main issue in this case is whether trial counsel's *investigation* of a potential alibi defense was sufficient under any reasonable application of *Strickland*. After all, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. If trial counsel's investigation of a potential alibi defense was unreasonably limited, then trial counsel's decision not to present an alibi defense is too ill-informed to be considered reasonable. *See, e.g.*, *Mosley*, 689 F.3d at 848 ("If . . . Mosley's lawyer never found out what their testimony would be, he could not possibly have made a reasonable professional judgment that their testimony would have been cumulative or bolstered the State's case and could not have chosen not to call [them] as a matter of strategy."); *United States v. Best*, 426 F.3d 937, 946 (7th Cir. 2005) ("Few decisions not to present testimony can be considered 'strategic' before some investigation has taken place."). So we focus on trial counsel's investigation of Stitts's alibi defense, not on trial counsel's later decision not to present one.

## A. State Court Unreasonably Applied *Strickland* Regarding Trial Counsel's Alibi Investigation

The state appellate court framed Stitts's investigation claim as being about whether trial counsel performed any alibi investigation *at all*, not whether trial counsel's investigation was adequate (e.g., "Stitts has failed to show that trial counsel did not investigate his claimed alibi defense.").[2] Framed in this something-or-nothing manner, the state court decision concluded that trial counsel's interview of Stitts's father was sufficient. But nothing in *Strickland* suggests that the ineffectiveness issue is about whether or not *any* investigation was done in all cases, but whether or not the extent of trial counsel's investigation was *adequate* depending on the facts in each particular case. As *Strickland* explained, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to *make reasonable investigations* or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690-91 (emphasis added). For example, in *Wiggins v. Smith*, 539 U.S. 510 (2003), trial

---

[2] The State does not argue that Stitts framed his argument solely in terms of whether trial counsel failed to investigate his alibi defense at all. Nor could it successfully do so. In Stitts's appellate brief presented to the Indiana Court of Appeals, Stitts argues at length that trial counsel should have investigated more, not that he failed to investigate at all. (R. 278-85.) Stitts frames the argument similarly in the federal proceedings.

counsel limited his investigation of the defendant's troubled childhood (i.e., mitigating evidence) to two documents, and the Supreme Court found that the state court unreasonably applied *Strickland* when it deemed this limited investigation to be sufficient. *See id.* at 527. In doing so, the Court expressly rejected the argument that trial counsel at least performed *some* investigation, explaining that:

> In assessing the reasonableness of an attorney's investigation, . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further. Even assuming [trial counsel] limited the scope of their investigation for strategic reasons, *Strickland* does not establish that a cursory investigation automatically justifies a tactical decision with respect to sentencing strategy. Rather, a reviewing court must consider the reasonableness of the investigation said to support that strategy.

*Id.* at 527. Similarly, the Court rejected the dissent's protest that trial counsel "*did* investigate," explaining again: "But as we have made clear, the Maryland Court of Appeals' conclusion that the *scope* of counsel's investigation into petitioner's background met the legal standards set in *Strickland* represented an objectively unreasonable application of our precedent." *Id.* at 528-29 (emphases in original); *see also Rompilla v. Beard*, 545 U.S. 374, 383 (2005) (state court unreasonably applied

*Strickland* when it found that counsel's limited investigation was adequate). The state court's conclusion that trial counsel was not ineffective simply because he performed *some* investigation therefore flies in the face of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Our recent decision in *Brady v. Pfister*, ___ F.3d ___, No. 11-3365, 2013 WL 1285863 (7th Cir. Apr. 1, 2013) discussed whether, in situations like this one where the state court's reasoning was unreasonable, we should then consider whether there is a "chain of reasoning under which the state court's conclusion can be reconciled with established federal law as determined by the Supreme Court," *id.* at *6, which is the standard applied in *Harrington*, or whether we should look to lower state court decisions for alternative reasoning and/or whether we should review the claim *de novo*. *Id.* at *9; *see also id.* at *6-*8 (discussing application of *Harrington* in *Johnson v. Williams*, 133 S. Ct. 1088 (2013)). But even under the most deferential standard applied in *Harrington*, we find that there are no "arguments or theories" that a "fairminded jurist[]" would believe are consistent with Supreme Court precedent that "could have supported[] the state court's decision." *Harrington*, 131 S. Ct. at 786. When a defendant's alibi is that he was at a nightclub at the time of the shooting, where there are presumably many people, we cannot fathom a reason consistent with Supreme Court precedent that would justify a trial counsel's decision to interview only a *single* alibi witness without exploring whether there might be others at the venue who could provide credible

alibi testimony. There is simply no evidence in the record to suggest that exploring the possibility of other alibi witnesses "would have been fruitless" under these circumstances. *Wiggins*, 539 U.S. at 525.[3] *See, e.g.*, *Rompilla*, 545 U.S. at 383 (failure to investigate prior conviction file was inexcusable when trial counsel knew that the defendant's felony history was central to the case, and where "the prior conviction file was a public document, readily available for the asking"); *Wiggins*, 539 U.S. at 525 ("The scope of their investigation was also unreasonable in light of what counsel actually discovered in the DSS records."); *Raygoza v. Hulick*, 474 F.3d 958, 963 (7th Cir. 2007) (state court application of *Strickland* was unreasonable, noting that "[h]ad [trial counsel] gleaned the information from [defendant's mother] about the evening party that was easily available for the asking, he would have learned that this was not a case where only the mother was willing to vouch for a defendant's alibi. To the contrary, witnesses both related and unrelated to Raygoza could have been called."); *Washington v. Smith*, 219 F.3d 620, 630-34 (7th Cir. 2000) (state court application of *Strickland* was unreasonable, where trial

---

[3] And in that respect, the state court's finding that "[n]othing in the record indicates that trial counsel knew or even could have discovered that Harris could have provided Stitts with an alibi defense prior to trial" was also an unreasonable determination of the facts in light of the record, because the mere fact that Stitts claimed to be at the nightclub meant that trial counsel could have discovered Harris, or potentially any number of alibi witnesses, prior to trial.

counsel did not "attempt to ascertain what [other alibi witnesses] might contribute to his case," failed "to attempt to contact any other witness besides Ms. Richardson," and "would have known" to produce another alibi witness if he had actually read the available detective's report); *see also Marshall v. Rodgers*, ___ S. Ct. ___, No. 12-382, 2013 WL 1285304, at *4 (U.S. Apr. 1, 2013) (per curiam) ("an appellate panel may . . . look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent").

For instance, if Stitts's father claimed that Stitts was having a one-on-one dinner with him at the time of the shooting, and trial counsel concluded that the father would make a poor witness, then it could be reasonable to end the alibi investigation at that point. Or if trial counsel made some significant effort to find more alibi witnesses other than the father, but was unable to do so because Stitts could not identify anyone he knew who was there (and recall that Stitts's father testified that Stitts's brother was also at the Post that night), or because of the passage of time and the fading of memories, then failure to further investigate might not be unreasonable. *See Rompilla*, 545 U.S. at 383 ("reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste"); *Strickland*, 466 U.S. at 691 ("[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."). Or if

trial counsel interviewed a few potential alibi witnesses but each of them expressed uncertainty as to whether Stitts was at the Post precisely at the time of the shooting (and we note that the Post appears to be within a short driving distance to the shooting site), then it might be reasonable to end the investigation there. *See, e.g.*, *Burger v. Kemp*, 483 U.S. 776, 792-94 (1987) (failure to interview additional witnesses was reasonable, where those already interviewed revealed information that would have harmed the defendant's case). But nothing in the record reflects anything even close to these scenarios, or any other reason that might reasonably justify a decision not to investigate the possibility of other alibi witnesses. Notably, the State was unable to provide any such reason, either in its brief or at oral argument.[4] The state court's decision was therefore an unreasonable application of *Strickland*.

### B. State Court Unreasonably Applied *Strickland* When It Found No Prejudice

We turn next to prejudice. The state court found that even if trial counsel were ineffective, there was no prejudice. But no "fairminded jurist" would arrive at this conclusion, *Harrington*, 131 S. Ct. at 786, because the prosecution's case rested entirely on the testimony of two somewhat unreliable witnesses. As the Indiana

---

[4] Instead, the State principally argued at oral argument that trial counsel *did* investigate further, a point which we address separately below.

Court of Appeals itself noted on direct appeal, the prosecution's closing argument "pointed out that no witness had contradicted Lawton's and Charles's testimony that Stitts had been in the car when Hartson was shot, and that no witness had contradicted Lawton's testimony that he had witnessed Hartson's murder." (App. 18.) This would not have been the case if alibi witnesses took the stand. And if these witnesses testified, the trial would have been transformed from a one-sided presentation of the prosecution's case into a battle between competing eyewitness testimony, where there would have been a "reasonable probability" that a jury would have reasonable doubt as to Stitts's guilt and therefore acquit. *Harrington*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 694); *see Smith v. Cain*, 132 S. Ct. 627, 630 (2012) (evidence impeaching prosecutor's eyewitness testimony was "plainly material" when that eyewitness testimony "was the *only* evidence linking [the defendant] to the crime" (emphasis in original)); *United States v. Agurs*, 427 U.S. 97, 113 n. 21 (1976) ("If, for example, one of only two eyewitnesses to a crime had told the prosecutor that the defendant was definitely not its perpetrator and if this statement was not disclosed to the defense, no court would hesitate to reverse a conviction resting on the testimony of the other eyewitness." (citation and quotation marks omitted)); *see also, e.g.*, *Washington*, 219 F.3d at 635 ("All Washington needed to do was establish a reasonable doubt, and having additional, credible alibi witnesses would have covered a lot of ground toward that goal. The Wisconsin Court of Appeals looked at the mass of evidence that

Washington could have produced but for Mr. Engle's errors, and it unreasonably concluded that its absence did not cause prejudice."). Because there is no "reasonable argument" that could justify the state court's finding of no prejudice, *Harrington*, 131 S. Ct. at 788, the state court's application of *Strickland*'s prejudice prong was also unreasonable under § 2254(d)(1).

### C. District Court Should Determine the Extent of Trial Counsel's Investigation

Though the state court decision was an unreasonable application of *Strickland*, what remains unresolved is whether trial counsel *in fact* limited his alibi investigation to an interview of Stitts's father. If trial counsel did more than simply interview Stitts's father (as the State explicitly asserted for the first time at oral argument), then his conduct might have been reasonable under *Strickland*, and Stitts's habeas petition would be denied. The state appellate court decision did not answer that critical factual question (and neither did the state trial court). Instead, the court essentially assumed for the sake of argument that trial counsel's investigation was limited to the father, but concluded (unreasonably) that such a limited investigation would have passed constitutional muster anyway. Nor is the record so clear that we can simply answer this question as an appellate court. *Cf., e.g., Wiggins*, 539 U.S. at 531 (making *de novo* factual determination concerning extent of counsel's investigation based on the "record as a whole"). On the one hand, if trial counsel did not speak to the father,

a principal alibi witness, until the eve of trial, it is reasonable to infer that trial counsel did not talk to anyone else. On the other hand, trial counsel's affidavit is entirely silent about the extent of his investigation.

Therefore we remand so that the district court may first determine the extent of trial counsel's alibi investigation and then determine *de novo* whether that investigation constituted ineffective assistance under *Strickland*. *See Mosley v. Atchison*, 689 F.3d 838, 853 (7th Cir. 2012) ("Where a habeas petitioner shows that a state court's decision denying relief was contrary to or an unreasonable application of federal law, that will often show that the petitioner is entitled to relief, but . . . it will not do so always and automatically. Whether the petitioner is actually entitled to relief—whether under § 2254(a) he is in custody in violation of the Constitution or laws or treaties of the United States—is a separate question."). Remand is appropriate in situations like these because the state court did not make a critical factual finding to which we may defer. *See* 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct"). As we explained in *Mosley*:

> The situation here is similar to that when a trial court erroneously grants a defendant's motion for summary judgment. An appellate court will assume that the plaintiff's evidence is true and will reverse the summary judgment if there are genuine issues of material fact. The appellate court's reversal, though, usually will not order

> that a final judgment be entered in favor of the plaintiff, but will remand for a trial to resolve those disputed issues of fact.

689 F.3d at 853. For example, in *Mosley*, the state court found that the *Strickland* claim must fail even assuming that the affidavits submitted by the petitioner were true, without determining whether the affidavits were *in fact* true. So after we found the state court's application of *Strickland* to be unreasonable, we remanded for the district court to determine in the first instance whether the affidavits were true. *See id.* at 854; *see also, e.g.*, *Wiggins*, 539 U.S. at 523-31 (considering *de novo* whether trial counsel's investigation was in fact limited to two documents, where the state court "clearly assumed" that counsel's investigation was so limited without making an express factual determination). We do the same here.

This procedure is not inconsistent with *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), which held that review for unreasonable application of clearly established federal law under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* at 1398. We do not remand for an evidentiary hearing to determine whether the state court unreasonably applied *Strickland* pursuant to § 2254(d)(1); we have already found that it did, without going outside the state court record. Instead, we remand to reach an issue that the state court never addressed: what exactly trial counsel actually did in investigating the alibi defense and whether that was unreasonable under *Strickland*. This inquiry is basically a fresh determi-

nation of constitutionality pursuant to § 2254(a). *See* 28 U.S.C. § 2254(a) (habeas petition shall not be entertained unless petitioner "is in custody in violation of the Constitution"); *Mosley*, 689 F.3d at 852-54 (remand under similar circumstances is pursuant to § 2254(a), not § 2254(d), determination and so does not run afoul of *Pinholster*); *cf. Toliver v. Pollard*, 688 F.3d 853, 859-60 (7th Cir. 2012) ("*Pinholster* does not apply to Mr. Toliver's case because the Wisconsin courts never addressed whether Mr. Toliver's counsel performed deficiently. *Pinholster* prohibits federal evidentiary hearings only on inquiries that are subject to AEDPA—that is, inquiries that the state courts have addressed."). As Justice Breyer's separate opinion in *Pinholster* explains,

> If the federal habeas court finds that the state-court decision fails [§ 2254(d)]'s test . . ., then an [evidentiary] hearing may be needed. For example, if the state-court rejection assumed the habeas-petitioner's facts (deciding that, *even if* those facts were true, federal law was not violated), then (after finding the state court wrong on a (d) ground), an [evidentiary] hearing might be needed to determine whether the facts alleged were indeed true.

*Pinholster*, 131 S. Ct. at 1412 (Breyer, J., concurring in part and dissenting in part); *see also Mosley*, 689 F.3d at 853-54 (discussing this distinction). That is essentially the situation here. Though the state court did not explicitly say it was "assuming" any particular set of facts, the state court framed the issue as being whether trial counsel

conducted any alibi investigation *at all*, which made it unnecessary for the state court to determine whether trial counsel did more than interview Stitts's father. Its conclusion that the interview was sufficient was therefore no different from saying that "even if [petitioner's] facts [that trial counsel only interviewed the father] were true, federal law was not violated." *Pinholster*, 131 S. Ct. at 1412 (Breyer, J., concurring in part and dissenting in part). Since we found that conclusion to be unreasonable, we now remand "to determine whether the facts alleged [about trial counsel's limited investigation] were indeed true." *Id.*

If the district court finds that trial counsel performed no further investigation and there was no other fact that would reasonably justify that conduct, then the district court should grant Stitts's habeas petition under the reasoning we have articulated above. But if the district court finds that trial counsel did more, then it must determine *de novo* whether that investigation was reasonable under *Strickland*. Moreover, we note that although we have largely framed the critical factual issue as being about whether or not trial counsel's alibi investigation was limited to an interview with Stitts's father, we do not intend to suggest that the district court cannot make other factual findings that may be relevant to determining whether there was a violation of *Strickland* pursuant to 28 U.S.C. § 2254(a). This may include, but is not limited to, determining when and what exactly Stitts told trial counsel, why trial counsel did not talk to Stitts's brother, what exactly Stitts's father told trial counsel, and any facts that may explain

why trial counsel ended his alibi investigation at what-
ever point he chose to end it.

### III.  CONCLUSION

For the above-stated reasons, we REVERSE the district
court's denial of Stitts's petition and REMAND for pro-
ceedings consistent with this opinion.