In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2515

CHRISTOPHER MOSLEY,

*Petitioner-Appellee,*

*v.*

KIM BUTLER,

*Respondent-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 05 C 248 — **Joan B. Gottschall**, *Judge.*

ARGUED MAY 21, 2014 — DECIDED AUGUST 11, 2014

Before BAUER, ROVNER, and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.* The State for a second time appeals
the district court's decision granting Christopher Mosley's
petition for a writ of habeas corpus, 28 U.S.C. § 2254. In the
first appeal, we agreed with the district court that the state
court decision denying relief on Mosley's claim of ineffective
assistance of counsel rested on an unreasonable determination
of facts and an analysis that was contrary to *Strickland v.*

*Washington*, 466 U.S. 668 (1984). *Mosley v. Atchison*, 689 F.3d 838, 849–51 (7th Cir. 2012). Thus, 28 U.S.C. § 2254(d) no longer dictated that the district court defer to the state court's opinion. We remanded the case to the district court to review additional evidence, make findings of fact based on that evidence, and decide if Mosley was in custody in violation of the Constitution and, thus, entitled to a writ of habeas corpus, 28 U.S.C. § 2254(a). *See Mosley*, 689 F.3d at 854. We also held that, if the evidence corroborated Mosley's allegations, then his conviction was unconstitutional. *Id.* at 841, 852.

On remand the district court held that Mosley's trial attorney had rendered ineffective assistance under *Strickland*. The court again granted Mosley's petition, and the State again appeals. The State argues that the district court analyzed the state court's decision under § 2254(d), instead of analyzing independently whether Mosley was being held unconstitutionally under § 2254(a). In answer to the latter question, the State asserts that Mosley was represented by able and effective counsel at trial, and the district court's conclusion to the contrary rests on erroneous findings of fact.

Although the question is close, we affirm. Though the district court used incorrect language to describe its job on remand, it recognized its duty and correctly reviewed Mosley's *Strickland* claim under § 2254(a), concluding that counsel had rendered ineffective assistance in violation of Mosley's Sixth Amendment rights. As we explain below, we agree with that assessment. The district court's order to release or retry Mosley is affirmed.

**Background**

We recounted the facts and history of this case in our prior decision, *see Mosley*, 689 F.3d at 845–846, so here we discuss only the details relevant to this second appeal.

### A. State Court Proceedings

Mosley, who opted for a bench trial, was convicted of first-degree murder and arson under an accountability theory, *see* 720 ILCS 5/5-2, after an August 1997 apartment fire on the south side of Chicago took the life of an elderly resident. Mosley was a member of the Gangster Disciples, and the State argued that he ordered two younger gang members to set the building afire in retaliation for the actions of a different resident, Marlo Fernando, a rival gang member. Earlier, Fernando's car window was smashed when she refused to pay "taxes" to the Gangster Disciples for selling drugs out of her apartment. She asked Mosley for the repair costs but was never reimbursed, so she began calling the police whenever Mosley or other Gangster Disciples spent time outside her building.

Fernando testified that Mosley had threatened her at least five times before the fire, and that immediately before she realized her building was on fire, she heard Mosley say "burn this motherfucker down." Nailal Ledbetter, a friend of Fernando's, corroborated her testimony, agreeing that between 10:00 and 10:30 p.m. the night of the fire, Mosley ran past the window, looked up, and said "burn this motherfucker down." According to both women, within seconds the building was on fire and smoke had filled the hallways. At the close of the State's evidence, trial counsel moved for a judgment of acquittal, arguing that Fernando's testimony was incredible

and therefore insufficient to convict Mosley. The trial court denied the motion. The defense then called only Ishi Coward, who testified that Mosley was in a schoolyard across the street for three hours before the fire. Coward testified that she never heard Mosley order anyone to set the fire or let the building burn. The trial court did not believe Coward and found Mosley guilty of both charges. He was sentenced to consecutive prison terms of 60 years for the murder and 15 years for the arson.

After an unsuccessful appeal, Mosley filed a post-conviction petition in state court, 720 ILCS 5/122 *et seq*, arguing that he was denied effective assistance of counsel at trial. He asserted that counsel should have called two witnesses to give exculpatory testimony and attached affidavits from both. The first, Keely Jones, swore that she was with Mosley and a group of others in the schoolyard on the night of the fire from around 8:00 p.m. until the fire began at 10:30 p.m. Jones stated that when the fire broke out, Mosley and the others ran across the street and helped some of the victims. The other witness, Sharon Taylor, was a friend of Mosley's who lived in the apartment directly above Fernando. She stated that from her apartment window she saw Mosley and a group of others in the schoolyard; she never heard him say anything about burning down the building. When the fire started, Mosley and the others ran over from the schoolyard, yelling that the building was on fire, and Mosley rescued Taylor's infant son by catching him as she dropped him from the window. According to the affidavits, both Jones and Taylor unsuccessfully attempted to reach Mosley's attorney by phone, and both spoke with him in court. Counsel told both he would need

them to testify, but neither was called to do so during the trial, though both were present.

The trial court reviewed the affidavits and summarily denied Mosley's petition as frivolous and without merit. The court of appeals affirmed that decision, agreeing that counsel's decision not to call the witnesses was reasonable and a matter of strategy. The court also ruled that Mosley was not prejudiced by counsel's actions because "the record shows that the outcome of the trial would not have differed if Jones and Taylor had testified." The Illinois Supreme Court denied Mosley's petition for leave to appeal without opinion.

### B.   Federal Proceedings—Evidentiary Hearing and First Appeal

Mosley then petitioned the district court for a writ of habeas corpus, 28 U.S.C. § 2254, maintaining that his trial counsel had rendered ineffective assistance. The district court held an evidentiary hearing, at which Jones, Taylor, and Mosley's trial attorney testified. Jones's and Taylor's testimony largely was consistent with their affidavits submitted in Mosley's state post-conviction petition. Jones added that she saw Mosley run into the burning apartment building to aid rescue efforts. She also said that she received an affidavit in the mail detailing her recollection from the night of the fire. The affidavit contained blank areas that she filled in, and she then signed the affidavit and mailed it back to the sender, though she could not recall who that was. Taylor remembered Mosley visiting her the night of the fire and offering to bring her dinner. After he left, about 45 minutes before the fire began, she looked out of her window and saw Mosley in the school-

yard with others, but she did not recall seeing any adult females. She testified about Mosley's aid in rescuing her young son but said she never saw Mosley enter the apartment building after the fire had started. She denied speaking in person with Mosley's attorney but conceded that Mosley had written her affidavit and that she had signed it despite some of the factual inaccuracies because she wanted to help Mosley.

Mosley's attorney, Robert Strunck, testified that he had not planned to call any witnesses at the trial because he was convinced that his motion for judgment of acquittal would be granted. He was "shocked" when the motion was denied and asked for a short continuance, during which he spoke with Coward and decided to call her as a witness because her testimony placed Mosley in the schoolyard all evening. He did not recall speaking with Taylor but testified that her testimony placing Mosley briefly inside the apartment building would have contradicted his theory that Mosley was in the schoolyard the entire night. Strunck also described as harmful Taylor's testimony that Mosley was in the schoolyard with only men and children, which contradicted Coward's testimony that adult females also were present.

After the hearing but before the district court rendered its decision on Mosley's petition, the Supreme Court decided *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011), which holds that review of state-court proceedings under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the merits of the claims in the petition. Based on that ruling, and argument from the State, the district court disregarded the new evidence from the evidentiary hearing

and limited its analysis to the state trial record, including the affidavits from Jones and Taylor.

Yet based on that limited review, the district court concluded that Mosley had met the standards of § 2254(d)(1) in two respects. First, the court determined that the state court had unreasonably determined that Strunck's failure to call Jones and Taylor was part of his trial strategy. Second, the court ruled that the state court's conclusion regarding the prejudice element of Mosley's *Strickland* claim was contrary to federal law because the state court had required that Mosley show the outcome of his trial *would have been* different, but *Strickland* requires only that he show a *reasonable probability* of a different outcome. The court thus conducted a *de novo* review of Mosley's claim and concluded that there was, in fact, a reasonable probability that but for counsel's poor performance at trial, the outcome would have been different.

The State appealed that decision. We agreed with the district court that counsel's failure to call Jones and Taylor could not have been a matter of strategy: According to the state record, Strunck never interviewed either witness and did not know whether their testimony would have been helpful. The presumption of reasonableness that attaches to counsel's strategic decisions, we held, does not apply to "consequences of inattention." *Mosley*, 689 F.3d at 848. Moreover, we noted that it was unreasonable for the state court to conclude that the testimony from Jones and Taylor was cumulative. Their testimony, we explained, would have bolstered Coward's, which was shaky and rejected by the trial judge. Both witnesses placed Mosley across the street at the time the fire started, an observation that contradicted the State's theory that

he was near the apartment building ordering the other boys to burn it down. The state court's conclusion that counsel did not perform deficiently, we agreed, was unreasonable.

We also agreed that the state court's conclusion that Mosley was not prejudiced by counsel's actions was contrary to controlling precedent. The state court, we noted, repeatedly misstated the appropriate prejudice standard under *Strickland*, again warranting *de novo* review. We concluded that "if the Jones and Taylor affidavits are taken at face value, Mosley was prejudiced by his counsel's failure to call the two witnesses." *Mosley*, 689 F.3d at 851.

Though we affirmed the district court's judgment that Mosley had met the requirements of § 2254(d), we vacated the court's grant of the writ and remanded. Whether Mosley is entitled to relief under § 2254(a), we explained, depends on whether he "is in custody in violation of the Constitution or laws or treaties of the United States." That is a different question than whether the state court's decision is unreasonable under § 2254(d). We thus instructed the district court to make findings of fact based on either the evidence presented at the earlier evidentiary hearing, at a new hearing, or both, and to determine if Mosley met the standard of § 2254(a).

### C. Federal Proceedings—Order on Remand

On remand the district court again granted Mosley's petition. The court found that Strunck was not aware of what Taylor would have said, and so his failure to call her was not entitled to the presumption of reasonableness that applies to counsel's strategic decisions. According to Strunck's testimony, the court concluded, his trial strategy had focused entirely on

Fernando's testimony, which counsel assessed was unbelievable and insufficient to support the conviction. When the trial court rejected the motion for a judgment of acquittal, the court explained, Strunck scrambled to assemble a defense case, settling for Coward's testimony placing Mosley outside the apartment building the entire night. The decision not to prepare a defense in the event the motion was rejected, the court concluded, was unreasonable. The court did not make any findings regarding Jones's testimony.

The court then turned to whether Mosley was prejudiced by his counsel's performance and determined that based on all the evidence that the state judge did have, there was a reasonable probability that Taylor's additional testimony would have changed the outcome of the trial. Again, the court disregarded Jones's testimony. The court ordered Mosley released, unless the State announced an intent to retry him or filed a notice of appeal.

Before doing either of those things, however, the State filed a motion to alter or amend the judgment, FED. R. CIV. P. 59(e), asserting that the district court had assessed Mosley's claim under the wrong standard—it had repeatedly ruled that the state court's decision was unreasonable under § 2254(d), yet the proper inquiry was under § 2254(a). The court acknowledged its inappropriate citations and statements of the legal standard but assured the parties that it had assessed the claim under the proper standard. The court rejected the remainder of the State's arguments to amend the judgment, pointing to its earlier decision and refusing to reanalyze the claims. The State then filed a notice of appeal, returning the case to us.

**Discussion**

The State mounts three challenges to the district court's grant of Mosley's petition. We address each in turn.

### A.  Whether the district court properly ana-
### lyzed Mosley's claim under § 2254(a).

The State first argues that the district court's analysis was flawed because it reviewed Mosley's petition under § 2254(d), which asks whether the state court's factual or legal findings were unreasonable, rather than under § 2254(a), which asks whether the petitioner is unconstitutionally in the custody of the State. The State points to several instances in the district court's order on remand where the judge referred to § 2254(d) and held that the state court's conclusions were unreasonable.

This issue first was raised in the State's motion under Rule 59(e) to amend the judgment. We review the judge's denial of that motion for abuse of discretion. *Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th Cir. 2008). The district judge acknowledged that she had cited to the incorrect statute but amended her order, clarifying that the decision was under § 2254(a). More-over, despite the judge's references to whether a conclusion of the state court was unreasonable, she concluded her opinion: "Mosley has shown that his counsel's performance fell below an objective standard of reasonableness," and that there is "a reasonable probability that Taylor's testimony . . . would have changed the outcome of the trial." It is clear that the district judge understood that her task on remand was to make an independent assessment of Strunck's performance under § 2254(a), as we directed. *See Mosley*, 689 F.3d at 854. The court determined anew that Mosley was being held unconstitution-

ally, *see Stitts v. Wilson*, 713 F.3d 887, 895–96 (7th Cir. 2013), and granted the writ pursuant to § 2254(a). The errors of the district court in referring to § 2254(d) and the conclusion that the state court acted unreasonably were immaterial to its final determination. We thus see no abuse of discretion in its order.

### B. Whether the district court's factual findings are clearly erroneous.

The State next questions various factual findings of the district court; specifically, its findings regarding the testimony of Taylor and Strunck. The State insists that the court's findings are irreconcilable with the record. We review factual findings by the district court for clear error, *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011), reversing only if the district court's findings are "implausible in light of the record viewed in its entirety," *Ray v. Clements*, 700 F.3d 993, 1013 (7th Cir. 2012) (internal quotation marks omitted). We will not disturb the court's choice between competing acceptable views of the evidence, *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985), and we defer to the court's factual findings, particularly because it heard the testimony and observed the witnesses as they testified, *see Ray*, 700 F.3d at 1013; *United States v. Jackson*, 300 F.3d 740, 745 (7th Cir. 2002). The State does not quarrel with that standard. We review each of the State's assertions of error below.

#### i. *Mosley's location at the time of the fire.*

The State first argues that the court incorrectly found that, based on Taylor's testimony, Mosley was in the apartment building 45 minutes before the fire started but across the street in the schoolyard when the fire started. According to the State,

Taylor testified that she knew Mosley's location at only two specific instances: when he left her apartment 45 minutes before the fire, and after the fire started when she noticed Mosley and the others running to the building as it burned. The State notes that Taylor testified that she did not again look out the window between those two instances and asserts that, in the interim, Mosley could have returned to the apartment and given the instruction to burn down the building.

Taylor testified at the hearing that Mosley had visited her the evening of the fire, offering to bring her ribs for dinner. When Mosley left, Taylor said, she saw him go across the street to the schoolyard, approximately 20 to 25 feet from her building. She watched Mosley in the schoolyard for only "two minutes at the most" before walking to the bathroom to bathe her son. From her bathroom window, Taylor could not see the schoolyard. She did not again look out the window to the schoolyard, but neither did she hear yelling or talking from outside through her windows, which were open and directly above Fernando's. From this, the district court concluded that Taylor, if called at the trial, would have testified that "Mosley was in the building 45 minutes before the fire and then was across the street in a group of men and children at the time the fire started." The district court later framed Taylor's testimony as establishing that Mosley left her apartment 45 minutes before the fire started "and went across the street to the schoolyard," thus saying nothing about whether he remained there until the fire began.

From Taylor's testimony it is possible to conclude that Mosley had enough time to instruct the other gang members to burn down the building. But it also is plausible that he did

not leave the schoolyard until the apartment building was in flames. That either theory is possible from Taylor's testimony does not make the district court's finding clearly incorrect. *Ray*, 700 F.3d at 1013; *Stankewitz v. Wong*, 698 F.3d 1163, 1169 (9th Cir. 2012). Although Taylor did not watch Mosley every minute after he left her apartment, it is an acceptable conclusion that he remained in the schoolyard until he noticed the fire and ran over to help. Thus, the court's finding was not clear error.

### ii. Strunck's knowledge of Taylor's proposed testimony.

The State next argues that the district court erroneously found that attorney Strunck did not know the content of Taylor's possible testimony and, thus, erroneously held that his decision not to call her could not have been strategic. The State points out that, although Strunck did not recall speaking with Taylor, he testified that he "would have been aware of her" because he added her to the list of defense witnesses and asked an investigator to contact her, just as he had with Coward. As with Coward, the State says, Strunck would not have listed Taylor as a potential witness without knowing what she would say. Thus, the State concludes, there is no reason to believe that Strunck was not aware of what Taylor's testimony would have been.

But as the State acknowledges, Strunck testified that he could not recall ever talking to Taylor despite her inclusion on the witness list. He testified that his usual practice was to write contemporaneous notes during his conversations with potential witnesses, yet he had no notes from any conversation with

Taylor. Strunck pointed out that his file may have been incomplete, a possible explanation for the missing notes. But neither did he recall any facts about Taylor at all, including her apartment's location directly above Fernando's, her two-year-old son who allegedly was rescued by Mosley, or her friend-ship with Mosley. We recognize that the bench trial from which these details are being recalled occurred in 1997. But Strunck also testified that this case "stuck with me." That he cannot recall any of the details of Taylor's testimony, which we now know would have been very helpful to the defense, does not help the State's argument that he did know what she would have said and intentionally kept her off the stand. Either the case was not that memorable or else he remembers only what he knew in 1997, which the district court concluded does not include any statement by Sharon Taylor. Based on Strunck's testimony, we disagree with the State that the district court's finding that Strunck was not aware of Taylor's testi-mony is erroneous.

### iii. Other factual contests.

The State also challenges a random assortment of other factual findings by the district court regarding Strunck's testimony: that he failed to subpoena Fernando so he could call her in defense, prepared the case expecting the state court to reject Fernando's testimony "in toto," and characterized some of Taylor's proposed testimony as harmful. But these immate-rial statements, if they are incorrect, do not undermine the district court's conclusion or encourage us entirely to dismiss the court's factual findings. *See United States v. Houston*, 745 F.3d 863, 865 (7th Cir. 2014) (minor discrepancies in factual findings are not a basis for finding clear error).

### C. Whether the district court correctly concluded that Mosley's attorney rendered ineffective assistance.

Lastly, the State challenges the district court's grant of Mosley's petition for a writ of habeas corpus. We review the court's order granting Mosley's petition *de novo*. *Stitts*, 713 F.3d at 891. In order to establish that his attorney was ineffective, Mosley needed to prove that counsel's performance was objectively unreasonably and that, because of that performance, he was prejudiced. *Strickland*, 466 U.S. at 688, 694. Prejudice means that without counsel's errors, there is a reasonable probability that the outcome of the trial would have been different. *Id.* We defer to strategic decisions counsel made, even if that strategy ended unsuccessfully, *Shaw v. Wilson*, 721 F.3d 908, 914 (7th Cir. 2013), but a strategic decision limited by poor investigation or preparation may be "too ill-informed to be considered reasonable," *Stitts*, 713 F.3d at 891; *see United States v. Best*, 426 F.3d 937, 946 (7th Cir. 2005) ("Few decisions not to present testimony can be considered 'strategic' before some investigation has taken place."). The State contests the district court's ruling on both elements of ineffective assistance, asserting that Mosley established neither element.

#### i. Strunck's performance.

The district court concluded that counsel's performance was objectively unreasonable. A number of facts were important to the district court's determination. To start, Strunck testified that he expected his motion for a judgment of acquittal to be granted. Because of his confidence in the motion, he did not prepare a defense case: He had not subpoenaed Fernando

for recall as part of his case, he was unprepared to call any other witness to testify, and he had not met Taylor to discuss what she knew, even though Mosley had told him that she could provide exculpatory information. (The district court did not make a finding regarding Strunck's awareness of Jones before the trial.) Instead, Strunck called only one witness, Ishi Coward, whose testimony was shaky and rejected by the trial judge based on her demeanor. Taylor, the district court found, would have testified that Mosley left the apartment building 45 minutes before the fire started and was in the schoolyard across the street. But because Strunck did not know that information, the court found, he did not make an informed decision not to call her. His failure properly to investigate Taylor thus deserved no presumption of reasonableness and demonstrated that his performance as Mosley's lawyer was lacking.

We agree with the district court. We noted in our opinion in Mosley's earlier appeal that if what Taylor said in her affidavit were true, then Strunck "could not possibly have made a reasonable professional judgment" not to call her "as a matter of strategy." *Mosley*, 689 F.3d at 848. At the evidentiary hearing Taylor testified largely in conformity with her affidavit. It is her testimony that Mosley was across the street when the fire started that would have bolstered Coward's identical testimony, and Coward's testimony needed support because the trial judge believed that she wavered too much to be believed. Moreover, Mosley's location when the fire started was the critical issue in the case. An additional witness placed Mosley away from the scene of the fire at the time it began, yet counsel was unaware that such a witness existed. The district

court did not resolve whether Strunck was aware of Jones, but his failure properly to investigate Taylor's testimony and uncover this exculpatory information, we agree, renders his performance objectively unreasonable.

### ii.  Prejudice.

The district court also concluded that Mosley was prejudiced by his attorney's inaction and unreasonable investigation. The state's case, the court recounted, principally relied on the testimony of Fernando. But her testimony, in the court's words, reflected "an almost impossible factual scenario," in which the two boys who allegedly were instructed by Mosley to burn down the building moved from outside the building up to the second-floor staircase, poured gasoline and set the fire, *and* the fire progressed enough to fill the hallway with smoke all within a matter of a few seconds. The court noted that the only counter to this hard-to-believe testimony was Coward's testimony, and she also was a weak witness. The trial judge rejected her testimony, leaving only the word of the State's witnesses, but as the district court pointed out, the state judge seemed concerned with counsel's presentation. Because the defense case needed an evidentiary boost, the district court concluded, it was reasonably probable that Taylor's additional testimony would have altered the result of the trial.

We noted in our earlier opinion that if Taylor's affidavit were taken at face value, in addition to suggesting counsel's performance was deficient, there is a reasonable probability that the result of the trial would have been different, and thus Mosley was prejudiced by counsel's failure to call her. *Mosley*, 689 F.3d at 851–52. The truth of her affidavit now has come to

bear. Taylor's testimony did not entirely track Coward's—Taylor testified that Mosley was in her apartment 45 minutes before the fire, whereas Coward testified that Mosley was in the schoolyard the entire evening; Coward said she was with Mosley and other adult females, but Taylor recalled seeing no adult females—but it did match her affidavit. And the state judge found Coward less believable than Fernando. The defense case needed more evidence to support its lone witness. We do not know how Taylor would have held up on the stand. But there is at least a reasonable probability that had she testified, the trial judge would have accepted her testimony, which bolstered Coward's words on the critical issue of Mosley's location at the time the fire started and further discredited Fernando's fantastical account, thereby changing the verdict. Counsel's failure to interview Taylor, however, squelched that opportunity and doomed the defense case. We conclude that Mosley was prejudiced by his counsel's unreasonable representation.

### Conclusion

Our confidence in the outcome of the trial is shaken. We agree with the district court that attorney Strunck provided ineffective assistance to Mosley, and Mosley thus is in custody in violation of the Sixth Amendment of the Constitution of the United States. Accordingly, we AFFIRM the district court's decision granting Mosley's petition for a writ of habeas corpus. The order to release Mosley, unless the State announces its intent to retry him, is affirmed.